Dear Mr. Kaufmann,
On behalf of the Civil Service Board for St. Tammany Parish Fire Protection District No. 4 (the "Board"), you have requested an opinion from this office regarding reimbursement for college courses taken by firemen.
According to your request, the Board is tasked with determining the duties and qualifications for certain positions. The Board has set a requirement that in order to apply for a promotion to District Fire Chief, applicants must possess one of the following: an associate degree of fire science, an associate degree in EMS that includes a paramedic program, or any bachelor's degree. The Board has a policy whereby it reimburses employees for the college tuition they spend in trying to obtain one of these degrees.
Your request further states that when the Board initially began the tuition reimbursement program, it would reimburse the employees for any college or university they attended provided the school was accredited. Many employees began taking classes online through Pikes Peak Community College (located in Colorado). After an issue arose concerning cheating in online classes at Pikes Peak Community College, the Board amended its tuition reimbursement policies. A dispute has arisen as to whether certain individuals should be reimbursed for the cost of tuition for online classes taken through Pikes Peak Community College. Specifically, you have asked the following:
 1. Is it legal for the Board to determine by name which college or university it will reimburse tuition or not reimburse tuition for? *Page 2 
 2. Is it legal for the Board to reimburse one employee's tuition for attending Pikes Peak Community College, but then refuse to reimburse another employee for tuition to Pikes Peak Community College?
 3. If a degree is required for promotion, would the Board not have to pay for the entire degree?
On October 8, 2002, the Board approved the following recommendations made by the fire chief regarding reimbursement for classes taken at Pikes Peak Community College:
 1. The department will no longer accept an Associate Degree from Pikes Peak College for incentive pay purposes unless an individual had been enrolled in the program prior to the fall semester of 2002. Stipends will only be offered to those individuals.
 2. The department will reimburse individuals any amounts that they may have expended for portfolio evaluations provided that these individuals will not be allowed to seek a degree from Pikes Peak.
 3. Individuals that are allowed to continue in the program must use Chief Gorrondona as a proctor for exams, etc.
This policy remained in effect until February 1, 2008, when the Board adopted a revised policy on college tuition reimbursement. The new policy provides, in pertinent part, as follows:
 Board Committee Approval. A committee consisting of a Member of the Appointing Authority, Chief of Training and the Fire Chief will research the college or university, evaluate their curriculum, accreditation, level and number of classes required to obtain an Associate Degree. The committee will determine if reimbursement will be allowed on a case by case basis thru [sic] this evaluation.
 As of February 1, 2008 any employee that is considering reimbursement for educational expenses relating to an Associate Degree must submit a written request [to] the committee for reimbursement of the college or university expenses they choose to attend before taking any classes.
 * * * Failure to Comply. Failure to comply with this policy will result in non-payment of reimbursement.
The policy adopted by the Board on college tuition reimbursement gives the board flexibility in determining whether to reimburse certain classes. In addition *Page 3 
to the provisions discussed above, the policy places the following conditions and limitations on reimbursement:
 The Board of Commissioners will determine the amount of tuition reimbursement, which is subject to change at any time, based on available funds budgeted for such purposes. The current amount is $70.00 per credit hour.
 The Fire District will only reimburse up to a maximum of 12 hours per each semester.
 A final grade of "C" or better is required for reimbursement.
 The Fire District will only reimburse an employee for the tuition expenses of one (1) Associate Degree.
 Employees are not eligible for reimbursement for second Associate Degree, Bachelor's or Master's Degree under this policy.
Because the reimbursement of college tuition is made with public funds, this reimbursement program must be examined in light of La.Const. art. VII, § 14, which provides, in pertinent part, as follows:
 "Section 14(A) Prohibited Uses. Except as otherwise provided by this constitution, the funds, credit, property, or things of value of the state or of any political subdivision shall not be loaned, pledged, or donated to or for any person, association, or corporation, public or private . . . `
In Board of Directors of the Industrial Development Board of theCity of Gonzales, Louisiana, Inc. v. All Taxpayers, Property Owners,Citizens of the City of Gonzales, et al., 2005-2298 (La. 9/6/06),938 So.2d 11 (the "Cabela's" case), the Louisiana Supreme Court abandoned its prior analysis in City of Port Allen. v. LouisianaMun. Risk Mgmt. Agency, Inc., 439 So.2d 399 (La. 1983), and articulated a new standard of review governing La.Const. art. VII, § 14(A), stating that La.Const. art. VII, § 14(A) "is violated when public funds or property are gratuitously alienated." Cabela's,938 So.2d at 20.
In light of the Cabela's case, it is the opinion of this office that in order for an expenditure or transfer of public funds to be permissible under Art. VII, Sec. 14(A), the public entity must have the legal authority to make the expenditure and must show: (i) a public purpose for the expenditure or transfer that comports with the governmental purpose for which the public entity has legal authority to pursue; (ii) that the expenditure or transfer, taken as a whole, does not appear to be gratuitous; and (iii) that the public entity has a demonstrable, objective, and reasonable expectation of receiving at least equivalent value in exchange for the expenditure or transfer of public funds. The Cabela's
standard places a strong emphasis on the reciprocal obligations between the parties to ensure that there is not a gratuitous donation of public funds. *Page 4 
We must first determine whether paying for or reimbursing firemen for college degrees (an associate degree of fire science, an associate degree in EMS that includes a paramedic program, or any bachelor's degree) required for a promotion constitutes a public purpose that the fire department has the legal authority to pursue.
Our office has previously opined that "[p]ublic funds may be utilized to educate and equip public officials and personnel with regard to their public duties and responsibilities." Atty. Gen. Op. No. 05-0036.
In Atty. Gen. Op. No. 03-0175, this office stated that "in order for any fire department, and indeed many organizations, to properly conduct business and communicate with and train personnel, necessary and proper meetings, workshops and training programs are appropriate. Such meetings, workshops and training sessions also clearly serve the public purpose and create a public benefit of promoting proper and efficient fire protection by the various volunteer fire departments."
In Atty. Gen. Op. No. 08-0302, in response to the question of whether the City of Denham Springs could reimburse fire fighters for training expenses, this office stated that, "Training expenses which can reasonably be included are those which are required for a newly-hired fire fighter to become a permanent employee."
We find there to be a difference between educating and training employees with regard to their public duties and responsibilities and paying for their college education. Further, we do not believe the expenditure of public funds in connection with obtaining an associate or bachelor's degree qualifies as a public purpose which comports with the governmental purpose which fire districts are charged with undertaking.
In our view, obtaining an associate or bachelor's degree, while commendable, does not reasonably relate to the normal public duties and responsibilities of a fireman. Under the current policy, employees can be reimbursed for classes taken towards any bachelor's degree. Many bachelor's degrees have very little or no relationship to firefighting or fire safety. Although a bachelor's degree is required for a promotion, it is our understanding that an associate or bachelor's degree is not required in order to fulfill the duties and responsibilities of a fireman, as evidenced by the fact that firemen are hired by the Board without an associate or bachelor's degree. Similarly, it is our understanding that an associate degree of fire science and/or EMS is not required in order to fulfill the duties and responsibilities of a fireman. In our view, the expenditure of public funds for education and training that goes above and beyond what is necessary to assist firemen in performing their normal public duties and responsibilities *Page 5 
amounts to an expenditure that is inconsistent with the duties the Board is charged with undertaking. Accordingly, since the proposed expenditure fails to meet the first prong of the Cabela's test as this office has consistently interpreted it, it is our opinion that the Board may not pay for or otherwise reimburse firemen for obtaining an associate or bachelors' degree, as such an expenditure would amount to a prohibited donation.
This opinion in no way restricts or otherwise recalls our previous opinions opining that fire districts may expend funds "to educate and equip public officials and personnel with regard to their public duties and responsibilities." As previously indicated, such expenditures are legal and permissible provided they comply with the constitutional mandate of Article VII, Sec. 14. In that regard, in the event the Board does plan to expend funds in connection with educating and training personnel on matters related to their public duties and responsibilities, it must ensure that it has a demonstrable, objective, and reasonable expectation of receiving at least equivalent value in exchange for the public funds it expends.
We note that past opinions of this office addressing the question of whether a police or fire department could pay for training costs of employees, concluded that the employer who pays the cost of training can enter into a contract with the employee stating that the employee would repay the cost of training if he/she failed to stay with the department for a specific length of time, in order to protect the employer by preventing employees from receiving free training for the benefit of another company. In Atty. Gen. Op. No. 93-0277, this office opined that employees may be required to sign contracts stating that they would repay the department the tuition fee for P.O. S.T. training if they fail to stay with the department for a specific length of time. In Atty. Gen. Op. No. 08-0302, we concluded that the City of Denham Springs had the authority to enact an ordinance requiring newly-employed fire fighters to sign an employment contract whereby they would have to reimburse the City for training expenses paid by the City, on a pro-rata basis, if they accept employment elsewhere before a specified period of time. In Atty. Gen. Op. No. 00-0487, this office concluded that a municipal government had the power to enact ordinances regulating the employment of police officers, and that a requirement in the employment contract that police officers remain in the town's employ for six months following training is within the municipality's powers.
All of these opinions conclude that the time set must be reasonable, and a reasonable length of time has been referred to as the length of time required for the employer to have "amortized its investment." Atty. Gen. Op. No. 93-0277. If the Board uses public funds for training employees (not educating them by paying for an associate or bachelor's degree), we would suggest entering into similar contracts with the firemen being trained to ensure that the public entity is receiving equivalent value for the funds spent. *Page 6 
Because we have determined that it is a violation of La.Const. art. VII, Sec. 14(A) for the Board to use public funds to pay for a college degree for its employees, the questions presented in your opinion request become moot.
We trust this adequately responds to your request. However, if our office can be of further assistance, please do not hesitate to contact us.
 Yours very truly,
 JAMES D. "BUDDY" CALDWELL Attorney General
 By: __________________________ Lindsey K. Hunter Assistant Attorney General
 JDC/LKH/crt